**J. H. LAMPLEY and Lampley Motors, Inc., and State Trust Company, Plaintiffs,**

v.

**The LUMBERMENS MUTUAL INSUR-ANCE COMPANY, a Corporation.**

**Civ. A. No. 1639.**

United States District Court
W. D. North Carolina,
Asheville Division.

Jan. 2, 1958.

---

Whitmire & Whitmire, Henderson-ville, N. C., for plaintiffs.

Leatherwood, Walker, Todd & Mann, Greenville, S. C., Adams & Adams, Asheville, N. C., for defendant.

WARLICK, District Judge.

Plaintiffs bring this action seeking thereby to recover the alleged sum of $13,500 resulting from a fire loss under the terms of a policy of insurance issued to them by the defendant. Plaintiff J. H. Lampley resides in Henderson County in the Western District of North Carolina. Lampley Motors, Inc., is a North Carolina corporation, and the State Trust Company is likewise a banking corporation chartered under the laws of the State of North Carolina. The defendant is an Ohio corporation, with its principal office at Mansfield in said state.

With the amount sought to be recovered in excess of $3,000, exclusive of interest and costs, jurisdiction lies in this court, however the action was originally instituted in the Superior Court of Henderson County, North Carolina, and was removed on account of a diversity of citizenship. Sec. 1332, 28 U.S.C.A.

On April 16, 1951, plaintiffs other than the State Trust Company were engaged in the sale and repair of automobiles in the City of Hendersonville, holding a franchise dealership for Chrysler products with its place of business located on North Church Street in such city, selling Chrysler annd Plymouth automobiles. On that date defendant issued and delivered to plaintiffs, other than the State Trust Company, its policy of insurance, No. 32,072,812, in the basic amount of $15,000, and received in payment therefor the premium in the sum of $574.70, insuring against loss by fire the "furniture, fixtures, equipment and supplies, usual and incident to the business of a garage". The policy being a North Carolina standard fire policy and being for five years and expiring on April 16, 1956. Subsequently plaintiffs moved their business to Main Street in the City of Hendersonville, and later during the month of May, 1955, after giving up the Chrysler franchise, moved the personal property insured in the above policy to 137–3rd Avenue, E., in said city. Both removals being shown by riders attached to the policy. On March 4, 1955, an endorsement was placed on such policy of insurance to the effect that any loss that the property may sustain the proceeds therefrom were to be payable to the State Trust Company, one of the plaintiffs, and subsequently on the loss coming about, State Trust Company was permitted to become a party plaintiff to the action.

On February 1, 1955, Lampley and Lampley Motors terminated the Chrysler dealership by agreement, effective May 5, 1955, and thereafter plaintiffs engaged in the business of second hand and used car dealers. Pending a sale of the parts carried in stock at the termination of the Chrysler agency, such parts were

stored at 137–3rd Avenue, E., in a one story brick building owned by and leased from defendant's agent in Hendersonville. Thereafter plaintiffs had an itemized inventory made of all the parts and accessories stored in the building as rented for that purpose. Such inventory totalled $14,242.43. Nothing was thereafter removed from the building until the fire, when insured property in the ·sum of $1,131.08 was segregated from the damaged property and was turned over to the plaintiffs at an agreed value of $801.53. Plaintiffs at all times prior to the fire kept both entrances to the building where the supplies and accessories were stored securely locked, plaintiffs having one set of keys and Hobbs and his associate owner having another set. On the night of March 20–21, 1956, around midnight a fire of undetermined origin came about which virtually destroyed the sale value of all of the insured property therein. Following the fire the plaintiffs filed with the defendant a proof of loss,—the defendant took full possession of the building and its contents,—boarded up the windows, placed new locks on the doors, and remained in the exclusive possession of said building and its insured contents for approximately two months, when the keys held by the agent of the defendant were turned over to the plaintiffs. ·

After a thorough investigation the defendant refused to recognize the claim for the loss sustained and this action was instituted.

The issuance of the policy, its face amount, the property insured, the changes in location, the payment of the premiums, the fire, some damage to the property therein as insured, and other circumstances of that character are admitted by the defendant in its answer. However among other things the defendant interposes as a defense to the claim of the plaintiffs, certain statutory as well as contractural limitations, the first being, "conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto, this company shall not be liable for any loss occurring

(a) while the hazard is increased by any means within the control or knowledge of the insured." And a further provision relating to the misrepresentation or concealment as follows: "This entire policy will be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

The insured property was located two blocks from the Hendersonville fire department, and on receiving the alarm the fire was put out in approximately ten minutes. Some of the witnesses classified it as a "flash" fire and others as a "surface" fire, but in any event it spread rapidly and did a considerable amount of damage before being extinguished.

The defendant labors three basic contentions in its evidence offered:

1. That the loss occassioned by the fire is greatly exaggerated.

2. That the hazard was increased through the application of kerosene on the insured property, and

3. That insured willfully misrepresented material facts and circumstances. Defendant states specifically that it does not contend that the plaintiff Lampley or his son Robert actually applied kerosene or other inflammable substances to the insured property whereby it was ignited,—but contends that some other person, either an officer, employee or agent did apply kerosene or other inflammable substance and thereby increased the hazard.

Practically all of the insured property in the building, with the possible exception of some seat covers, tires, and other properties of a similar nature, was automobile parts, made entirely from steel and steel products and held in pasteboard containers, marked and numbered, serially or otherwise, and placed in storage bins similarly marked, and when, as came about, in this instance, said covering and packaging was burned

away, usable parts of considerable worth became nothing but a mass of jumbled steel, incapable of separation and impossible of being classified as anything other than a total loss. This stock of parts and accessories held by plaintiffs was obviously for re-sale and use on Chrysler products and had accumulated over the years since 1939 when plaintiffs first acquired this Chrysler agency. A great majority were genuine Chrysler parts that were manufactured and sold by the company,—others were parts suitable for use on Chrysler vehicles, but manufactured and distributed by independent companies.

The stenographic report in this case consists of 372 pages,—seventeen witnesses testified, and from a careful study of the case it would appear that two major questions are presented:

(1) Was there sufficient evidence of a breach of the conditions against an increased hazard?

(2) Was there a sufficiency of evidence of a breach of the conditions with respect to false swearing?

Obviously the burden of proof on these two questions is upon the defendant. Considering the evidence with respect to the first condition, that of an increased hazard, it would appear that the great majority of the witnesses who first appeared upon the scene found no evidence of any kerosene or other inflammable materials of a comparable character. E. E. Edney, the Chief of the Fire Department of the City of Hendersonville, testified that he arrived upon the scene within approximately ten minutes after the fire alarm had been given; that members of his fire company were on duty and that the fire had been brought under control, and actually put out. That it, in his opinion was a flash fire,—one that makes a big blaze and is not too difficult to extinguish. That he immediately went into the building, examined the contents carefully, picked up many of them, discussed the situation with his assistant chief, who in his testimony in part corroborated Chief Edney,—found a jumbled mass of materials with many of the cartons containing parts at least partially burned away and many totally burned; that he smelled no kerosene or other odor of that character. He returned again the next morning and at that time found no evidence of kerosene. That many of the parts were encased in a substance called cosmoline to preserve them from rusting, and that where greasy substances appeared in the water on the floor, that by the use of a Kleenex, cosmoline was lifted rather than kerosene or gasoline. That it has an odor peculiar to grease substances. Other witnesses for the plaintiff gave similar testimony. One would be justified in assuming that other members of the Hendersonville Fire Department failed to find any evidence while fighting the fire of the odor of kerosene or a similar substance.

Defendant's evidence tended to show that there was a smell or odor of kerosene or some similar type substance and that such appeared in several instances in a pronounced sort of way. That Mr. Hargrove took certain samples and called such to the attention of the Chief Edney; that investigations were subsequently made and that the fire was a surface fire indicating that some inflammable material had been cast on the top of the receptacles containing the insured parts and later ignited. That kerosene or its derivative was found in certain laboratory tests made at the defendant's request and that this evidence should fully satisfy one of an increased hazard therein.

The plaintiffs offered evidence to the effect that there was a considerable quantity of friction oil, a substance commonly used in garages and service stations, and that this was stored with other of the insured accessories, and that there were quite a few of the unopened cans of such oil and a number which had exploded.

Considering the character of Mr. Lampley and his son Robert, the position of each in the community, their demeanor upon the witness stand, etc., I find that the evidence tending to show an increased hazard falls short of such showing and

does not successfully meet the burden of proof. I would therefore hold that the defendant has failed in its defense in that particular.

Giving consideration to the second question with respect to the matter of false swearing, all the evidence tends to show that when the plaintiffs gave up the Chrysler-Plymouth franchise and went entirely into the used or second hand car business, that all of the parts and accessories on hand were moved to the location where stored when the fire took place. That immediately following their removal and storage, an individual familiar with automobile parts and his wife were employed to make an inventory, itemizing each particular part and accessory therein and that when such was complete, Mr. Lampley and others associated with him in the work, using a parts catalog for prices, listed the costs thereon and that the grand total of such parts and accessories at such price, aggregated the amount as shown by the proof of loss filed. Evidently anyone familiar with the history of automobiles is fully aware that one in operating a dealership acquires through nonsale, a considerable number of parts for automobiles which are not then current, and likely many of the parts embraced in the inventory were for automobiles put on the market in the years preceding the fire. Naturally some of these unsold parts would deteriorate in value in that their likelihood of sale was not nearly so good as those parts necessary for current models, or just immediately preceding. Thus I am not satisfied that J. H. Lampley filed the proof of loss by falsely swearing with respect to this insured property or that he concealed or misrepresented any material fact or circumstance.

Judge Parker, in Orenstein v. Star Ins. Co., 4 Cir., 10 F.2d 754, deals with the case in which the principles are squarely on all fours with this particular cause of action. However the factors involved in the case therein decided are far different from the facts which are found in this particular case. Basically there is some analogy, actually the facts are poles apart.

When one comes to consider the amount to which plaintiffs are entitled to have and recover in this action, a rather difficult question arises, particularly in view, as set out above, of the fact that a great many of the parts were for automobiles for years earlier than the middle 1950's and that probably some of them actually were for use in Chrysler products during the 1940's. However from the testimony and a careful study thereof, I award to the plaintiffs a recovery as against the defendant the sum of $8,500, to be depreciated by the amount of $801.53, the agreed value of the property salvaged and turned over to and accepted by the plaintiffs, a present recovery amounting to $7,698.47.

Judgment to be signed for such amount with interest thereon at 6% and costs.